UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES EDKINS,

                Plaintiff,                        No. 15-10615

v.                                   District Judge Matthew F. Leitman
                                     Magistrate Judge R. Steven Whalen

UNITED STATES OF AMERICA,

                Defendant.

_____ /

## REPORT AND RECOMMENDATION

On February 18, 2015, Plaintiff Charles Edkins ("Plaintiff"), formerly housed at Federal Correctional Institution ("FCI") Milan in the custody of Bureau of Prisons, filed a *pro se* civil complaint under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Currently before the Court is  Defendant Scott Kevin Dubois, D.D.S.'s ("Defendant's") September 4, 2015 Motion for Summary Judgment [Doc. #22], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).[1]  For the reasons set forth below, I recommend that the motion be GRANTED, dismissing Dr. Dubois WITH PREJUDICE.

_____

[1]Plaintiff originally filed suit against a similarly named dentist (Matthew Scott Dubois, D.D.S.) but later stipulated to his dismissal.  *Docket #21, 26, 28.*

## I.  BACKGROUND

Between December, 2008 and March, 2011, Plaintiff spent most of a three-year, five-month sentence at FCI Elkton ("Elkton").  Plaintiff was released from Bureau of Prisons ("BOP") custody in March, 2011 but violated the terms of his supervised release and was sentenced to an additional two years in prison beginning in January, 2012.  The present Complaint pertains to his dental treatment at FCI Milan ("Milan") beginning January, 2012 until his release the following year.  *Defendant's Brief,* 4, *Docket #22.*

Plaintiff makes the following allegations regarding his dental care during his incarceration at Milan.

Prior to his January, 2012 arrival at Milan, Plaintiff filed grievances regarding his dental care while at Elkton, making regional BOP officials "fully aware" of his periodontic problems by submitting x-rays, medical opinions and comprehensive notes showing his "advanced perio disease as a diabetic."  *Complaint* at 4 of 12.  In November, 2010, Dr. Higham, D.D.S. found that Plaintiff was "'hopelessly periodonically involved.'"  *Id.*  During the incarceration at both Elkton and Milan, Plaintiff was treated for symptoms of diabetes.  *Id.* at 5.  Despite his well-established history of periodontic disease and diabetes at the time of his arrival at Milan, he was seen by a dental hygienist only once between January, 2012 and August, 2013.  *Id.* at 6.  As a result, Plaintiff continues to suffer from "excruciating pain;" "deterioration of the teeth and gums," and an "inability to digest food properly." *Id.* at 2.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial

of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6ᵗʰ Cir. 1989).  The non-moving party

must identify specific facts in affidavits, depositions or other factual material showing

"evidence on which the jury could *reasonably* find for the plaintiff."  *Anderson*, 477 U.S. at

252 (emphasis added).  If, after sufficient opportunity for discovery, the non-moving party

cannot meet that burden, summary judgment is clearly proper.  *Celotex Corp.*, 477 U.S. at

322-23.

### III.  ANALYSIS

Defendant Dr. Dubois, Milan's Chief Dental Officer, argues that Plaintiff cannot show

that the alleged need for more frequent teeth cleanings than administered by the BOP rose

to the level of an Eighth Amendment violation.[2] *Defendant's Brief,* 8-15, *Docket #22.*  He

---

[2]

Claims regarding Plaintiff's dental care at Elkton were dismissed without prejudice under Fed. R. Civ. P. 12(b)(2) on July 23, 2014. Case No. 13-11364. Plaintiff does not name "Elkton" defendants in the present case.

Plaintiff, proceeding *pro se,* claims that Defendant is attempting "to re-characterize [his] FTCA complaint as being filed under some Bivens theory." *Response* at 29.  However, Plaintiff's claim of Eighth Amendment violations sounds under *Bivens*.  "*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) acknowledged for the first time, an implied cause of action for damages against a federal agent for the violation of a citizen's constitutional rights." *Baker v. Bannum Place of Saginaw, LLC*, 2012 WL 3930122, at *4 (E.D.Mich. September 10, 2012)(Edmunds, J.)(citing *Correctional Services Corp. v. Malesko*, 122 S.Ct. 515, 519, 534, 151 L.Ed.2d 456 (1971)).  The fact that an individual claim  is analyzed under *Bivens* does not by itself extinguish an FTCA claim against the United States.  "*Bivens* actions and FTCA actions are parallel and complementary; a federal prisoner may maintain a Bivens suit against individual federal officers even though the underlying allegations could also support an FTCA suit against the United States." *Mann v. United States*, 2016 WL 1253267, *2 (E.D.Mich. March 31, 2016))Tarnow, J.)(*citing Left Fork Min. Co., Inc. v. Hooker*, 775 F.3d

-4-

contends further that even assuming the presence of a constitutional violation, the constitutional right to a teeth cleaning every three months is not clearly established and thus, he is entitled to qualified immunity. *Id.* at 15-16.

In his response, Plaintiff reiterates that Defendant Dr. Dubois was fully aware that the dental condition was exacerbated by diabetes and showed deliberate indifference by approving only one teeth cleaning over the course of Plaintiff's incarceration at Milan. *Response,* 1-11, *Docket #29.*

## A. The Eighth Amendment Claim

### 1. Applicable Law

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw

768, 777 (6th Cir. 2014)).

the inference, and that he then disregarded that risk." *Id.*  Deliberate indifference may be established by showing an interruption of a  prescribed plan of treatment, or a delay in medical treatment.  *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation.  *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860, fn.5 (6th cir. 1976).  *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra* ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

## 2.  Plaintiff Cannot Establish an Eight Amendment Claim

For purposes of this motion, the Court assumes that Plaintiff's dental condition was sufficiently serious to satisfy the objective prong of the deliberate indifference test.  It is on the subjective prong that Plaintiff's claim falters.

As a preliminary matter, Plaintiff's claim that he was incarcerated at Milan for 19 months as alleged in the Complaint is contradicted by his own exhibits showing that his stint at Milan began in  January, 2012 and ended in April, 2013.  *Response* at 36.  By Plaintiff's own account, he received a cleaning by his own dentist in October, 2011, by BOP hygienist Nicole Langenderfer in July, 2012, and again by his own dentist in April, 2013.  While the

-6-

Complaint alleges that he only received one cleaning in "19 months," his own records show that he received cleanings at approximately nine-month intervals for the period in question. *Complaint* at 6.

Further, none of the records supports the contention that Defendant perceived, then disregarded a risk to Plaintiff's health or well-being.   Defendant performed a dental examination six days after Plaintiff's arrival at Milan. *Defendant's Exhibit A, Docket #22-2* at 11.   According to the treating records, he rated Plaintiff's dental hygiene "poor," but after measuring Plaintiff's gums consistent with technique described by Community Periodontal Index of Treatment Needs ("CPITN"), determined that Plaintiff had only a  "low risk" of periodontal disease under the BOP's periodontal disease risk protocols. *Defendant's Exhibits D* at 1-2, *Exhibit E, Declaration of Scott Dubois, D.D.S.* at ¶ 8, *Docket #22-6* at 16, 28. Defendant Dr. Dubois states that Plaintiff did not inform him of a history of diabetes or periodontal disease at the time of screening, stating further  that if he had been informed of the "diabetes or a history of periodontal disease," he would have followed his usual practice of noting the record.  *Id.* at ¶ 12.

Further, Defendant's exhibits show that in April, 2012, Plaintiff was advised to "sign up for dental sick call" if he had "urgent dental concerns" between scheduled appointments. *Defendant's Exhibit A, Docket #22-2* at 33.   Plaintiff does not allege that he signed up for sick call and the records do not show that he requested urgent care.   Likewise, Defendant states that Plaintiff did not request emergency dental treatment or complain of dental pain

between July, 2012 and his April 23, 2013 release.  *Defendant's Exhibit E, Declaration* at ¶ 14.  The records do show that he was  seen on May 7, 2012 and June 14, 2012 by both hygienist Langenderfer and University of Michigan dental students.  *Defendant's Exhibit D, Docket #22-5* at 3-6.  Dental records attached to the present motion and Dr. Dubois' declaration indicate that Plaintiff received teeth cleaning with "scaling and root planing" in all four quadrants in July, 2012.  *Id.,* 22-5 *at 7-8, Declaration* at ¶ 13.  Dental records from an examination made the week after the April, 2013 release fail to show that Plaintiff's dental condition deteriorated due to Defendant's failure to administer more aggressive treatment.  Instead, the records state that "probing depths" were "stable." *Response* at 36.

Plaintiff nonetheless disputes Defendant's account of events.  He states that his November, 2011 letter to the "legal" department of BOP placed Defendant on notice that he experienced severe periodontal disease.  *Id.* at 46-50, *Docket #29-1* at 1-2.  In support of his contention that Defendant was aware of the periodontic history, Plaintiff has provided dental records showing that upon entering Elkton in 2008, he was diagnosed with "chronic periodontal disease."  *Id.* at 43.  November, 2010 Elkton records state that at least one tooth was "hopelessly periodontally involved." *Id.* at 44.  Plaintiff's March, 2012 Step One grievance states that he informed Defendant at the January, 2012 screening that he had diabetes and a history of periodontic disease.  *Defendant's Exhibit A, Docket #22-2* at 30. He presents dental treatment records showing that between his January, 2011 release from Elkton and his re-incarceration at Milan in January, 2012, he received teeth cleanings every

three months. *Response* at 3, 33-36.   Post-incarceration, October, 2013 dental records state that Plaintiff was advised to seek treatment from a periodontist.   July, 2014 dental records state that Plaintiff experienced "advanced periodoniti." *Id.* at 37.

Defendant is nonetheless entitled to summary judgment.   Assuming that Defendant was made aware of the history of periodontic disease at the time of the screening, the January, 2012 examination and evaluation of the gums showed that Plaintiff was nonetheless a "low" periodontal risk as of that month.   *Defendant's Exhibit D* at 1-2*, Exhibit E, Declaration,* at ¶ 8*, Docket #22-6* at 16-17.   Under the BOP protocol, treatment for low risk individuals requires an "annual exam by [a] general dentist and prophylaxis as needed." *Id., Docket #22-6* at 17.   While Defendant's determination, consistent with the BOP protocols, differs from the recommendation of Plaintiff's personal dentist, Plaintiff cannot show that Defendant's adherence to the BOP protocols amounts to a constitutional violation.   *Allison v. Martin*, 2009 WL 2885088,  *6 (E.D. Mich. Sept. 2, 2009)("[W]here an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment").

Plaintiff also disputes the July, 2012 dental records showing that he received "scaling and root planing" in all four quadrants.   *Response* at 6.   He contends that on the day of the alleged aggressive treatment, the hygienist "just did a normal cleaning and I was out of her chair in no more than 45 minutes." *Id.*   Once again, assuming the truth of Plaintiff's claim

that he did not receive scaling and root planing, he acknowledges that he received a 45-minute teeth cleaning consistent with the BOP protocol for an individual at low risk for periodontal disease.   He does not deny that prior to the July, 2012 cleaning, he was also evaluated by the same hygienist in May and June, 2012.

Plaintiff's claim that Defendant was deliberately indifferent to his dental condition or that the condition deteriorated as a result of Defendant's alleged non-feasance is undermined by other portions of the record.  Dental examination notes by Plaintiff's personal dentist created only one week after Plaintiff's release state that the periodontic condition was "stable." *Response* at 36.  Plaintiff cites *McCarthy v. Place*, 313 Fed.Appx. 810, 816, 2008 WL 5069039, *6 (December 2, 2008), in which the Sixth Circuit reversed a grant of summary judgment to a dentist who declined to fill a cavity for seven month despite being aware that the plaintiff was in "significant pain."   Here too, Plaintiff alleges that he experiences "pain and suffering" as a result of Defendant's failure to provide more frequent treatment.  *Response* at 8.  However, none of the evidence, including the Milan dental records, Plaintiff's March, 2012 grievance, or the dental records pertaining to his condition after release indicate that he experienced discomfort or pain during the 15 months Defendant oversaw his treatment.  As noted above, Plaintiff did not request an emergency examination for pain or urgent dental treatment during his incarceration at Milan. Whereas in *McCarthy,* the defendant dentist admitted that he was aware of the plaintiff's longstanding reports of pain resulting from an unfilled cavity, none of the records in this case suggests that Plaintiff

-10-

experienced significant pain during his time at Milan, much less that he made Defendant aware of his discomfort.

Plaintiff has also included a February, 2014 letter by Matthew R. VanderLaan, D.D.S. stating that Plaintiff required dental cleanings at three-month intervals. *Docket #29-2* at 3. Dr. VanderLaan states that his May, 2011 examination revealed "significant levels of periodontal destruction and degeneration" consistent with "significant lapse in proper dental and periodontal care." *Id.* However, Dr. VanderLaan's finding of "significant lapse in proper dental and periodontal care" refers to Plaintiff's condition following his January, 2011 release from Elkton. Given that Plaintiff was not incarcerated at Milan until January, 2012, it is of no import that Plaintiff's dental care was possibly substandard prior to May, 2011. Notably, none of the dental records created subsequent to Plaintiff's April, 2013 release from Milan suggest that his care by Defendant between January, 2012 and April, 2013 was deficient.

Because Plaintiff cannot show a constitutional violation by Defendant Dr. Dubois, the claims are also barred by qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County, Tenn.,* 534 F.3d 531, 538 (6th Cir. 2008)(*citing Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In determining whether claims are barred by

qualified immunity, the courts consider (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *See also Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 812, 172 L.Ed.2d 565 (2009). In the absence of a constitutional violation, the court need not determine whether the right in question was "clearly established." *Dunigan v. Noble,* 390 F.3d 486, 495 (6th Cir.2004).

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #22] be GRANTED, dismissing claims against Defendant Scott Kevin Dubois WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

-12-

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: April 10, 2016

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 10, 2016, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen

-13-